JULIAN G. BUCKLEY and MARY K. SLACK, appellants.

*v.*

LEWIS PERRINE and ADDIE S. PERRINE, respondents.

1. When an infant has been brought before a vice-chancellor on *habeas corpus*, and the petitioner for the writ and the person in possession of the infant make counter-claims to the permanent custody of the infant, they may, by entitling their pleadings in the court of chancery and filing them with the clerk of that court, presenting therein an issue which only that court is competent to try, indicate their purpose to transfer the controversy into that court, and so give that court complete jurisdiction of their cause.

2. The circumstances of this case show that the litigants over the right to the permanent custody of two young children, had in the manner above stated transferred the cause into the court of chancery, had consented that it should be heard before the vice-chancellor who had allowed the writ of *habeas corpus*, and had agreed upon a day set for final hearing.  *Held*, that the respondents,

Buckley v. Perrine.

who did not appear on that day, could not successfully assail the decree then made, upon the ground that the court had no jurisdiction, or that the order of reference to the vice-chancellor was made *ex parte*, or that they had not received *regular* notice of final hearing.

On appeal from an order of the chancellor, whose opinion is reported in *Buckley* v. *Perrine, 9 Dick. Ch. Rep. 285.*

Mr. *Garret D. W. Vroom,* Mr. *Edwin Robert Walker* and Mr. *Cortlandt Parker,* for the appellants.

Mr. *Chauncy H. Beasley* and Mr. *Richard V. Lindabury,* for the respondents.

The opinion of the court was delivered by

Dixon, J.

The pertinent facts in this case are stated in the preface to the chancellor's opinion, and need not be here repeated.   From them the learned chancellor concluded that his decree of November 26th, 1895, awarding to Mary Kemble Slack the care, custody and control of her daughters, aged eight and ten years, during their minority, had been made in a proceeding which was not pending in the court of chancery, and consequently was void. Thereupon he ordered that the decree should be vacated so far as it purported to be a decree in the court of chancery, and from such order the present appeal is taken.

The order is now defended upon three grounds—*first,* that on which it was rested by the chancellor ; *second,* because the decree vacated was not within the issue presented by the pleadings, and *third,* because the respondents had not due notice of the hearing on which the decree was made.

As to the first ground, it may be assumed that the authority conferred by the statute (*Gen. Stat. p. 1631 § 59*) upon vice-chancellors, to grant writs of *habeas corpus* and to hear and determine the same, as the chancellor may do, is only the authority which law judges also possess, to free persons from illegal restraint, and not "that beneficent prerogative which

exists in the court of chancery, to see to the protection and pro-
vide for the proper care" and permanent custody of infants. It
nevertheless is true that when an infant has been brought before
any officer by the statutory writ of *habeas corpus,* the parties
who then confront each other with counter-claims for its perma-
nent custody, may, by consent, take into the court of chancery
their contest for such custody, and thus give to that court com-
plete jurisdiction over their cause. That such jurisdiction may
be so acquired is clearly indicated by the decisions of this court
in *Baird* v. *Baird, 4 C. E. Gr. 481; English* v. *English, 5 Stew.
Eq. 738,* and *Richards* v. *Collins, 18 Stew. Eq. 283.*

The proceedings in the present case show that the parties did
thus transfer their cause into the court of chancery.

The consent of the petitioners to such transfer appears from
these circumstances: Their petition for the writ, their replies
to the respondents' answers, and all the orders made on their
motion, were entitled in the court of chancery and filed in the
office of the clerk of that court; in their order of October 15th,
1895, they recited that the children had been produced *in open
court,* and that the issue to be tried in the cause related to the
permanent custody of the children, an issue which only the court
of chancery had authority to try; in their order of October 22d,
1895, are similar recitals as to the production of the children
and the issue involved; and on November 25th, 1895, they
obtained a formal order, signed by the chancellor, referring the
cause to Vice-Chancellor Bird, an order which presupposes that
the cause was pending in the court of chancery.

The consent of the respondents to the transfer appears from
these circumstances: They expressly consented to the orders of
October 15th and 22d, which stated that they produced the chil-
dren *in open court,* and intended to raise and try an issue which
only the court of chancery could lawfully try; on October 18th,
1895, they entered in the office of the clerk of that court a gen-
eral appearance to the cause, and the answers which they subse-
quently made to the petition were entitled in that court and filed
with its clerk, and alleged that they produced the children, not
before the vice-chancellor as a magistrate, but before the court.

True, they addressed their answers to "His honor John T. Bird, one of the vice-chancellors of the State of New Jersey," but that address, when considered in connection with their other acts, only signified their intention that the cause in the court of chancery should be heard by him as an officer of that court, for in no other capacity could he acquire jurisdiction over the subject-matter which they presented for adjudication.

We think that the pendency of the cause in the court of chancery, by consent of the litigants, is clearly shown.

The next question relates to the scope of the issue.

As already stated, the orders of October 15th and 22d, to which both parties expressly agreed, unequivocally declare their purpose to raise and try an issue touching the permanent custody of the children. Such an issue is foreshadowed in the petition for the writ, which avers its object to be to take the children from the custody of Mrs. Perrine, who claimed to hold them under the will of their father, her brother, and to restore them to Mrs. Slack, their mother. In the answers to this petition, this issue is distinctly presented, it being therein claimed that Mrs. Perrine is legally entitled to the care, custody and control of the children during their minority, as their testamentary guardian under the will of their father. In reply to these answers, the petitioners meet the issue by denying the validity of the alleged will, and its legal effect if valid, and insist upon the right of Mrs. Slack, as mother and natural guardian of the children, to have their care and custody committed to her, even though they should prefer to remain with Mrs. Perrine.

These pleadings plainly put in question the rights of the contestants to the possession of the children during their minority.

The third reason assigned for the vacation of the decree is that it was made without the respondents' having had a proper opportunity to be heard.

The chancellor's order of November 25th, 1895, formally referring the cause to Vice-Chancellor Bird, seems to have been made without notice to the respondents, but in view of the fact that the repondents had addressed their answers to the vice-chancellor, and had also applied to him for a postponement of

Buckley v. Perrine.

the hearing, they should be presumed to have assented to such a reference, without which their own proceedings in the cause were *coram non judice.* As to the time set for hearing, the record indicates that, by consent of parties, a day had been duly appointed; that thereafter the respondents had asked for a postponement, which had been refused by the vice-chancellor, and a peremptory order had then been made by him, in presence of the solicitors and counsel of both sides, that the cause should be heard on November 26th, 1895. Nothing further was necessary to enable the court to try the case at the time so designated.

Our conclusion is that the decree of November 26th, 1895, made by the chancellor on the advice of the vice-chancellor, committing the care, custody and control of the children to Mrs. Slack during their minority, was made in a cause pending in the court of chancery, was within the issue raised in that cause, and does not appear to be invalid for want of due opportunity for the parties to be heard.

The order vacating it should, therefore, be reversed.

In this determination we do not intend to forestall any application which the respondents may think fit to make to the court below for a fuller investigation of the merits of the cause.

*For reversal*—DEPUE, DIXON, GUMMERE, BARKALOW, DAYTON, NIXON—6.

*For affirmance*—MAGIE, VAN SYCKEL, BOGERT, HENDRICKSON, KRUEGER—5.

PER CURIAM.

The respondents having failed to produce at the final hearing the young children who were the subjects of controversy in this cause, the vice-chancellor at once, without any notice to the respondents, took depositions *ex parte* as to the reasons for their non-production, and forthwith advised orders adjudging the respondents to be in contempt, and directing that they be confined in the county jail until they should purge themselves of the contempt. The chancellor accordingly signed such orders, but,

subsequently, on application by the respondents, set the orders aside. Hence this appeal.

Clearly, the orders vacated should not have been made. The alleged contempt was not committed *in facie curiæ*, and therefore the parties accused should have had ample notice and full opportunity to make defence before they were condemned. *In re Cheeseman, 20 Vr. 115 ; 4 Encycl. Pl. & Pr. 781.*

The order appealed from should be affirmed on this ground.